UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ENITAN OSAGIE ISIWELE,              )
                                    )
            Plaintiff,              )
                                    )
    v.                              )          Civ. Action No. 12-1447 (ABJ)
                                    )
UNITED STATES DEPARTMENT OF         )
HEALTH AND HUMAN SERVICES *et al*.,)
                                    )
            Defendants.             )
_____     )

**MEMORANDUM OPINION**

Plaintiff is a federal prisoner who has brought suit against several federal agencies and agency components as well as the Administrative Office of the United States Courts.  He challenges defendants' "withholding of certain information" in response to requests he made under the Freedom of Information Act, 5 U.S.C. § 552, and he seeks declaratory and injunctive relief, including "expedited service and fee waiver or reduction of fees."  Pl.'s Amended Verified Compl. [Dkt. # 29] at 1.  In addition to the Freedom of Information Act ("FOIA"), plaintiff invokes the Privacy Act, 5 U.S.C. § 552a, the Administrative Procedure Act ("APA"), 5 U.S.C. § 701, the Declaratory Judgment Act ("DJA"), 28 U.S.C. § 2201, and the All Writs Act, 28 U.S.C. § 1361.  Am. Compl. at 1.

Pending before the Court are Defendants' Partial Motion to Dismiss or, in the Alternative, for Summary Judgment [Dkt. # 39], Plaintiff's Motion for Summary Judgment or, in the Alternative, for Discovery [Dkt. # 48], and Plaintiff's Motion for In Camera Review [Dkt. # 49]. The parties have addressed all issues raised in the complaint with the exception of two requests.

*See* June 16, 2014 Order (staying the proceedings in part).   Upon consideration of the entire record, and for the reasons explained below, the Court will grant defendants' motion in part and deny it in part.

In addition, the Court will deny plaintiff's motion for summary judgment since it is not accompanied by "a statement of material facts as to which [plaintiff] contends there is no genuine issue," LCvR 7(h), and because, with respect to those claims for which the Court will grant judgment in favor of the defendants or remand the matter back to the defendants for further processing, it is moot.   The Court will also deny plaintiff's motion for discovery and motion for in camera review in light of the declarations defendants have proffered in support of summary judgment.   *See Schrecker v. U.S. Dep't of Justice*, 217 F. Supp. 2d 29, 35 (D.D.C. 2002), *aff'd*, 349 F.3d 657 (D.C. Cir. 2003) ("Discovery in FOIA is rare and should be denied where an agency's declarations are reasonably detailed [and] submitted in good faith[.]"); *Larson v. Dep't of State*, 565 F.3d 857, 870 (D.C. Cir. 2009), quoting *Hayden v. NSA*, 608 F.2d 1381, 1387 (D.C. Cir. 1979) (" Although district courts possess broad discretion regarding whether to conduct in camera review. . ., we have made clear that '[w]hen the agency meets its burden by means of affidavits, in camera review is neither necessary nor appropriate,' ") (alteration in original). When, as is the case here, the record includes deficient declarations, "the courts generally will request that the agency supplement its supporting declarations" instead of ordering discovery or the submission of documents for in camera review.   *Judicial Watch, Inc. v. U.S. Dep't of Justice*, 185 F. Supp. 2d 54, 65 (D.D.C. 2002), citing *Nation Magazine, Washington Bureau v. United States Customs Service*, 71 F.3d 885, 892 (D.C. Cir. 1995) (other citation omitted).

**BACKGROUND**

This action arises from plaintiff's FOIA requests to: (1) certain components of the Department of Health and Human Services ("HHS"), (2) the Department of Justice's Executive Office for United States Attorneys ("EOUSA"), and (3) certain components of the Department of Homeland Security ("DHS").   The relevant facts as documented by Defendants' Statement of Material Facts as to Which There is No Genuine Dispute are as follows.

**A.   HHS Records**

1.   OIG Request # 2010-0351KS

On February 5, 2010, plaintiff requested from HHS's Office of Inspector General ("OIG") "all [] administrative and personal records, all citizen complaints, incident reports, disciplinary actions, and related internal affairs information pertaining to the conduct of HHS-OIA Special Agent Joseph Reikers."   Decl. of Robin R. Brooks [Dkt. # 39-2], Ex. 1.   On June 22, 2010, HHS informed plaintiff that it was neither confirming nor denying the existence of responsive records, that such records, if any, would be exempt from disclosure under FOIA exemptions (b)(6) and/or (b)(7)(C), *see* 5 U.S.C. § 552(b), and that plaintiff could contact the Freedom of Information Officer in the Program Support Center for any requested "personnel" records.   *Id.*, Ex. 2.   In addition, HHS informed plaintiff about his right to appeal the determination within 30 days to the Deputy Assistant Secretary for Public Affairs.   *Id.*

2.   OIG Request # 2011-0380

In a letter dated April 18, 2011, plaintiff clarified an earlier request that sought "all information in the possession of . . . Special Agent [] Reikers," and explained that he was seeking "the full disclosure of all documents pertaining to myself. . . my company i.e. Galaxy Medical Supply, LLC and U.S. v. Enitan Osagie Isiwele, Case No. 1:08-CR-163, that were either 'created,

3

prepared by or received and reviewed by . . . Reikers."   Brooks Decl., Ex. 5.   In addition, plaintiff

requested a fee waiver because the requested information "is of primarily public interest, or

non-commercial purpose."   *Id.*

On July 22, 2011, OIG informed plaintiff that it had located 163 responsive pages, 13 of

which were being released in part and 42 of which were being withheld in their entirety.   OIG

further informed plaintiff that it was referring the remaining 108 pages to EOUSA and provided

the contact information for that "FOIA office now responsible for processing [those] records."

*Id.*, Ex. 6.   OIG withheld information under FOIA exemptions 5, 6, 7(C), and 7(E), and informed

plaintiff about his right to appeal its determination within 30 days.   *Id.*   On October 7, 2011, OIG

issued "an addendum," informing plaintiff that it was releasing an additional 14 pages in part that

had been "inadvertently referred" to DOJ.   *Id.*, Ex. 7.   OIG withheld information from that

release under FOIA exemptions 6 and 7(C), and again informed plaintiff about his right to appeal

the determination within 30 days.   *Id.*

3.   OIG Request # 2011-0598SS

In a letter dated July 5, 2011, captioned "Supplementary Request Under the [FOIA],

Expedited Services Requested," plaintiff requested all records pertaining to Special Agent

Riekers, including "(i) performance reviews for the previous 5 years; (ii) compensation records;

(iii) 'critical' employment records for the previous years; (iv) administrative grievances and

internal investigation records for the past 5 years, and (v) [OIG's] sponsored training programs."

Plaintiff also requested a fee waiver.   *Id.*, Ex. 8.

On July 18, 2011, OIG denied plaintiff's request for a fee waiver because he "did not

proffer any support of how the requested records, if any exist, would significantly contribute to the

public's understanding of HHS operations."   *Id.*, Ex. 9 at 2.   OIG also informed plaintiff about

his right to appeal administratively within 30 days.   On September 1, 2011, OIG informed

plaintiff that it had located 86 records responsive to his request for the performance reviews and

that it was releasing 85 pages in part and withholding one page in full.   OIG withheld information

under FOIA exemptions 6, 7(A), and 7(C).   In addition, OIG neither confirmed nor denied the

existence of records pertaining to administrative grievances and internal investigations, and it

informed plaintiff that any such information would be exempt under those same exemptions.

OIG referred the request for compensation records to "the PHS" FOIA office to process and

provide a direct response to plaintiff, and informed plaintiff that his request for "OIG sponsored

training programs and critical employment" failed to "sufficiently describe the desired records."

*Id*., Ex. 10.   No fee was assessed because the costs were "under the Department's $25 cost

effective threshold."   The letter closed with the notice of the right to appeal.   *Id*.

4.   CMS Request # 0929 2009 7017

On September 29, 2009, plaintiff requested "multiple categories of agency records related

to sixteen individual Medicare beneficiaries" and "billing information for disaster claims, and

information regarding the requirements for filing disaster claims for beneficiaries affected by

hurricanes Rita and Katrina."   Decl. of Michael S. Marquis [Dkt. # 39-4] ¶ 5.   On October 4,

2010, the Centers for Medicare & Medicaid Services ("CMS") denied plaintiff's request under

FOIA exemption 6, because he had not "presented valid authorizations . . . signed by the subject(s)

of the records," and advised him about his right to appeal to the Deputy Administrator within 30

days.   *Id*., Ex. 4 [Dkt. # 44-1].   "CMS did not receive any subsequent correspondence from the

Plaintiff indicating he wished to appeal this decision."   *Id*. ¶ 6.   *See* Pl.'s Response to Defs.'

Statement of Material Fact as to Which There is No Genuine Dispute ("Pl.'s Opp'g Facts") [Dkt. #

47-1] ¶ 1 ("Plaintiff instead of pursuing #0929 2009 7017 due to its deficiency, decided to submit

a new written FOIA request dated on or about February/March 2010 and duly received an acknowledgment letter . . . on or about March 23, 2010, signed by Mr. Michael S. Marquis[.]").

5.  CMS Requests ## 0503 2011 7018; 0503 2011 7020; 0503 2011 7054; 0503 2011 7055

Between April 24, 2011 and April 27, 2011, plaintiff submitted four more requests to CMS.  The first request dated April 24, 2011 (# 7018) sought Medicare claims data for Sigmah Home Health Services, Inc. of Houston, Texas, and detailed beneficiary claims data for years 2005-2008.  Marquis Decl. ¶ 17.  The second request dated April 25, 2011 (# 7020) sought Medicare claims data pertaining to power mobility devices, manual wheelchairs, power wheelchairs, and power operated vehicles for First Choice Medical Supply Company between 2000 and 2006, and provided an owner's name.  *Id*.  The third request dated April 27, 2011 (# 7054) sought similar claims information for "Lggo Global Equipment & Medical Services" between 2005 and 2008, and provided an owner's name.   The fourth request also dated April 27, 2011 (#7055) sought similar claims information and prescriptions written by Dr. Michael D. Kim of Houston, Texas, between 2001 and 2006.  *Id*.

By letter dated June 29, 2011, plaintiff acknowledged that the search fee for his four requests could exceed $250 and that he was "willing to pay" the costs.  He then requested that CMS remove those requests from "tolling" and send them to "your Medicare Contractor for a cost estimate and notify me in writing of the estimated costs" so that he could "make payment upon the receipt of the notification letter and time specified."   Marquis Decl., Ex. 10 [Dkt. # 44-1].   The Dallas Regional Office requested cost estimates of the search from two Medicare contractors, Palmetto Government Benefits Administrators and CGS Administrators, LLC.   Marquis Decl. ¶ 18.  An estimate of $368 was provided for the first request, but the administrators could not provide estimates for the remaining three requests because they needed the providers' identifier

numbers, and, in the case of the subject of plaintiff's third request "Lggo Global Equipment," the correct name. *Id.* ¶¶ 19-22.   Plaintiff sent a follow-up letter on November 7, 2011 addressed to the Director of CMS's Freedom of Information Group, requesting that he "act promptly on these FOIA requests" and complaining that he had been given "runaround treatment."   Am. Compl., Ex. 4J [Dkt. # 29-2].   CMS's FOIA Division has no record of having received that letter. Marquis Decl. ¶ 24.

In four separate letters dated May 16, 2012, CMS informed plaintiff that it was "conducting a review of pending [FOIA] requests to ascertain if the requested information is still desired" (hereafter "continued interest letter").   Marquis Decl., Ex. 11.   Each referenced the respective request number.   Plaintiff was told to sign and return the letter within five working days if he was still interested in receiving the documents; otherwise, CMS would "assume you are no longer interested in receiving the documents and the case will be administratively closed."   *Id.* Since "[t]he FOIA Division did not receive any replies to those letters," CMS closed the four requests two months later, on July 20, 2012 and July 27, 2012.   Marquis Decl. ¶ 25.

6.   CMS Requests ## 0708 2011 7009; 0708 2011 7010

On June 29, 2011, plaintiff submitted two requests to CMS.   The first request (#7009) sought Medicare claims data pertaining to power mobility devices, manual wheelchairs, power wheelchairs, and power operated vehicles for two Houston-based durable medical equipment companies -- Thurman Family Medical Services and Seniors Comfort & Caring Medical Services -- between 2000 and 2005.   Marquis Decl. ¶ 26.   The second request (# 7010) sought similar claims information and prescriptions written by Drs. Lewis Gottlieb, Jayshree Patel, and Charles Frank Skripka, Jr., whom plaintiff identified as employees of a Houston-based clinic owned by Dr. Gottlieb.   Plaintiff sought the information for years 2000 through 2006.   *Id.* ¶ 27.

Since "NPI numbers could not be located for the named entities" in request # 7009, and for

Drs. Gottlieb and Skripka named in request # 7010, CMS "could not" conduct a search.   *Id*. ¶¶

29-30.   As for the third doctor named in the latter request, Dr. Patel, CMS located "an NPI number

[but] could not locate a corresponding PTAN number."   Hence, the Medicare contractor, CGS

Administrators located no records pertaining to Dr. Patel.   *Id*. ¶ 30.   CMS has no record that it

notified plaintiff about the foregoing result.   *Id*. ¶ 31.   However, on May 16, 2012, CMS sent

plaintiff a continued interest letter with regard to requests ## 7009 and 7010, and closed those

requests on July 10 and July 11, 2012, when plaintiff did not reply.   *Id*. ¶ 32.

**B.   EOUSA Records**

1.   Requests ## 09-4535, 09-4784

 After plaintiff's three attempts to obtain records pertaining to his criminal prosecution in

the Eastern District of Texas, *United States v. Isiwele*, No. 1:08-CR-163, *see* Defs.' Facts ¶¶ 32-43,

EOUSA acknowledged the request on January 13, 2010, and informed plaintiff that it would be

processed under request number 09-4784; EOUSA denied plaintiff's request for expedited

processing.   Decl. of Kathleen Brandon [Dkt.# 39-1] ¶¶ 12, 13.

By letter dated March 26, 2010, EOUSA then denied plaintiff's request in full under FOIA

exemptions 3, 5, 7(A), 7(C), 7(D), and under section (j)(2) of the Privacy Act, 5 U.S.C. § 552a.[1]

Brandon Decl., Ex. K.   The letter further informed plaintiff that the office had withheld grand jury

material, that the responsive material included public records that could be obtained from the clerk

of the court or from EOUSA via a new FOIA request, and that he could appeal the determination

---

[1]   Defendants assert throughout the record that information was withheld also under the Privacy Act, 5 U.S.C. § 552a.   As will be discussed, section (b)(2) of the Privacy Act specifically excepts from its nondisclosure provisions documents that are otherwise required to be disclosed under the FOIA.

to the Office of Information Policy ("OIP") within 60 days.  *Id.*  OIP affirmed EOUSA's decision by letter dated May 25, 2010, and advised plaintiff about his right to file a lawsuit.  *Id.*, Ex. P.

The criminal case file located in the U.S. Attorney's Office in the Eastern District of Texas consisted of approximately "(1) 2000 pages of court-filed/public records; (2) thirty-five pages of Grand Jury Records; (3) five pages of correspondence; (4) fifty pages of attorney work product; and (5) six pages of public source materials."  Decl. of Andrea Parker [Dkt. # 39-5] ¶ 18.  The file did not include "state/local/foreign enforcement records" since they "had already been returned to the [Texas] Attorney General's Office" at the end of the criminal trial in March of 2009.  *Id.* & n.2.  According to the Parker declaration, this was consistent with the practice in the U.S. Attorney's office at the time.  *See id.*, n.2.

On June 12, 2010, OIP "advised" the U.S. Attorney's Office "to maintain the records related to [plaintiff's] request . . . for 120 days due to the possibility of ensuing litigation."  *Id.* ¶ 21.  After having "received no further communication regarding [the request]," and the affirmance of plaintiff's conviction "on appeal," the criminal case file "was purged and closed on October 19, 2012."  *Id.* ¶¶ 22-23.  In accordance with the "policy and procedures for closing files" in that U.S. Attorney's Office, "many items were shredded, such as correspondence, research, drafts, handwritten notes, and duplicates and copies."  *Id.* ¶ 23.  "Any original documents received from outside sources would have been returned to the originating source."  *Id.*

2.  Requests ## 09-4698, 10-3390

On November 23, 2009, plaintiff requested "the administrative and personnel records" of Special Assistant United States Attorney Howard B. Blackmon, Jr., and Assistant United States

Attorneys Christopher Tony Tortorice and Robert Rawls, and a copy of the U.S. Attorneys'

Manual.   In addition, plaintiff requested expedited processing in light of a "sentencing hearing

later in December 2009."   Brandon Decl, Ex Q.   EOUSA acknowledged the request by letter to

plaintiff dated January 7, 2010.   *Id*., Ex. R.   EOUSA "mistakenly" informed the U.S. Attorney's

Office in the Eastern District of Texas that plaintiff had requested the attorneys' oaths of office,

which were released to plaintiff, *id*. ¶¶ 26-28, with the exception of Blackmon's since he was a

Special Assistant who was not actually employed by that office.   Parker Decl. ¶ 25; *see also*

Brandon Decl. ¶ 35.

Plaintiff appealed and OIP remanded the request to EOUSA to "search for the [named

attorneys'] personnel files [and] the United States Attorneys' Manual" and to "process any

responsive records . . . and provide the requester with any disclosable portions, subject to fees."

Brandon Decl., Ex. V.   OIP informed plaintiff about the remand by letter dated August 11, 2010,

and about his right to file a lawsuit if dissatisfied with the outcome of the appeal.   *Id*., Ex. W.

The U.S. Attorney's Office in the Eastern District of Texas received OIP's remand letter on

September 2, 2010, and was advised by OIP "to maintain the records related to this request . . . for

120 days due to the possibility of ensuing litigation."   Parker Decl. ¶ 28.

By letter dated September 24, 2010, EOUSA informed plaintiff that the remanded request

for the records pertaining to AUSA's Tortorice, Rawls, and Blackmon was assigned a new

number, 10-3390.   Following a search in the Eastern District of Texas and the location of 37

pages pertaining to Tortorice and Rawls (who were employees of that office), EOUSA informed

plaintiff by letter dated April 8, 2011, that it was withholding all of the responsive pages under

FOIA exemption 6 and Privacy Act exemption (j)(2), and it further informed plaintiff of his right

to appeal the decision to OIP within 60 days.   Brandon Decl., Ex. Y.   Brandon states in her

declaration filed here that the Privacy Act exemption was "mistaken[]" and "was not a basis for withholding the documents."   *Id*. at 10, n.4.

Although plaintiff suggested in a letter dated April 18, 2011, that he did not need to appeal the foregoing decision since it stemmed from his prior appeal of 09-4698, *see* Brandon Decl., Ex. Z, plaintiff submitted an untimely appeal by letter of July 5, 2011, and requested that it be accepted since he was "out on writ" for resentencing and was without his documents from May 9, 2011 to June 24, 2011.   *Id*., Ex. AA.   Also by letter dated July 5, 2011, plaintiff submitted a document to EOUSA captioned: "Supplementary Request Under the Freedom of Information Act, Expedited Services Requested," purportedly expanding his original request for personnel records to include the three AUSAs' "(i) performance reviews for the previous 5 years; (ii) compensation records; (iii) 'critical' employment records for the previous 7 years; (iv) administrative grievances and internal investigation records for the past 5 years[;] and (v) EOUSA's "sponsored training programs."   Plaintiff also requested a fee waiver.   *Id*., Ex. BB.   EOUSA apparently treated that request "as a duplicate of . . . request 10-3390, which was pending appeal."   Brandon Decl. ¶ 40.

In a letter dated August 15, 2011, OIP noted that plaintiff had acknowledged his receipt of EOUSA's determination in the April 18, 2011 letter, which was dated "some three weeks before you state you went 'out on writ.' "   It closed the appeal "due to [plaintiff's] failure to timely appeal," *id*., Ex. DD, and denied plaintiff's request for reconsideration on February 1, 2012.   Ex. EE.

3.   Request # 10-2227

The number 10-2227 was assigned to the part of plaintiff's November 29, 2009 request seeking the U.S. Attorneys' Manual.   *See* Brandon Decl. ¶¶ 44-46.   By letter of July 21, 2010, EOUSA informed plaintiff that the Manual was publicly available at no cost via DOJ's reading

room, which he could access through an internet link set out in the letter.   *Id.*, Ex. GG.   Plaintiff

was also informed that the Manual "consists of 1,100 pages, and duplication fees apply if you wish

to receive a paper copy of the entire multi-volume manual . . . ."   *Id.*   After the first 100 free

pages to which plaintiff was entitled, EOUSA assessed a duplication fee of $100 and provided

three options for plaintiff to obtain the document in paper form.   Plaintiff could receive just the

free pages, all of the pages, or some of the pages.   *Id.* at 2.   If plaintiff chose the latter two

options, he was told to include the appropriate payment by check or money order, and "[i]f

payment is not received within 30 days from the date of this letter, your request will be closed and

any future requests for records will be rejected until payment is received."   *Id.*   Finally, plaintiff

was informed that the letter constituted "final action" and that he could appeal to OIP within 60

days.   By letter dated August 30, 2010, EOUSA informed plaintiff that this request was closed

due to his failure to respond to the July 21, 2010 letter "with your advance payment."   Brandon

Decl., Ex. HH.

4.   Request # 11-2776-R (Referral from HHS)

In processing OIG Request 2011-0380, HHS referred 108 pages to EOUSA on July 22,

2011 "for action and direct response to the requester" since the documents had originated with

EOUSA.   *Id.*, Ex. JJ.   On September 16, 2011, EOUSA released 19 pages in full, withheld 11

pages in full, and returned 78 pages to HHS "for direct response to [plaintiff]."   *Id.*, Ex. KK.

EOUSA withheld records under FOIA exemption 3 that had been sealed by a court and also

invoked exemption 7(C).   *Id.*   On appeal, OIP determined that the court records were no longer

sealed and on February 15, 2012, it remanded the request to EOUSA for additional processing.

*Id.*, Ex. NN.   On January 11, 2013, EOUSA released the 11 pages in full.   *Id.*, Ex. OO.

**C.   Homeland Security Records**

1. <u>USCIS Request #NRC2009058601</u>

On October 2, 2009, plaintiff requested from U.S. Citizenship and Immigration Services ("USCIS") all of his "records and alien files" from September 1, 1997 to the present.   Decl. of Brian J. Welsh [Dkt. # 39-7], Ex. A.   Following a search of the National File Tracking System, USCIS located plaintiff's "Alien File," and by letter dated February 5, 2010, informed plaintiff that it had identified 1,030 responsive pages.   *Id.* ¶¶ 8-9, 11.   USCIS released 884 pages in their entirety and 86 pages in part.   It withheld 49 pages in full and referred 11 pages "to another government agency for their direct response to you."   *Id.*, Ex. C. USCIS invoked FOIA exemptions 2, 5, 6, 7(C) and 7(E), and informed plaintiff about his right to appeal the determination within 60 days.   *Id.*   In response to plaintiff's appeal, USCIS released, on July 29, 2010, an additional 41 pages, 32 of which contained redactions under FOIA exemptions 2, 5, 6, 7(C) and 7(E).   *Id.*, Ex. E.

2. <u>ICE Request # 2010FOIA2727</u>

In February 2010, U.S. Immigration and Customs Enforcement ("ICE") received the eleven pages referred from USCIS.   Decl. of Catrina Pavlik-Keenan [Dkt. # 39-6] ¶ 6.   On March 11, 2010, ICE released the pages to plaintiff with portions redacted under FOIA exemptions 2, 6 and 7(C).   *Id.*, Ex. 2.   The letter informed plaintiff about his right to appeal the decision within 60 days.   In a supplemental response dated January 24, 2014, ICE stated that portions of the previously released eleven pages were withheld under exemptions 6, 7(C) and 7(E).   *Id.*, Ex. 3.

3. <u>ICE Requests # 2011FOIA4063 and 2013FOIA31766</u>

On December 5, 2010, plaintiff requested from ICE records maintained by his name "and/or an identifier assigned to my name, i.e. Alien Number-A 78 131 578."   *Id.*, Ex. 5.   The

request listed specific forms "sought but not limited to[.]"   FOIA Request at 1.   ICE determined

that responsive records would be located in plaintiff's Alien File and, thus, referred the request to

USCIS.   *Id.* ¶ 11.   Following a search, USCIS, in turn, referred one responsive page to ICE.   *Id.*

¶ 13.   On September 4, 2013, ICE released portions of the page and withheld information under

FOIA exemption 7(E).   *Id.* ¶ 14.

4.   NRC Request # 2011008278

ICE forwarded a copy of plaintiff's December 5, 2010 request to the DHS's National

Records Center ("NRC"), "as the requester was seeking his immigration records."   Decl. of Jill A.

Eggleston [Dkt. # 39-3] ¶ 8.   By letter dated January 19, 2011, NRC acknowledged plaintiff's

request, informed him, among other things, that the request was being placed in a complex track,

denied his request for a fee waiver, and advised about his right to appeal that decision within 60

days.   *Id.*, Ex. C.   In response, on February 7, 2011, plaintiff narrowed his request to a list of

specific forms "for the sake of clarity . . . [and] to be placed in the simple-track system."   *Id.*, Ex.

D.   Plaintiff also requested separately that he receive all responsive records in paper form, as

opposed to on a compact disk, since he is a prisoner with limited or no access to a personal

computer.   *Id.*

Also on February 7, 2011, plaintiff appealed the denial of his fee waiver request, stating

that he had satisfied the requirements for a waiver since "disclosure is not primarily in the

commercial interest . . . because the information sought is for litigation purpose[s][.]"   *Id.*, Ex. E.

The Office of General Counsel denied plaintiff's appeal on April 14, 2011, finding no "significant

public understanding of government operations or activities that would result from the release of

the records you seek."   *Id.*, Ex. F.   The letter advised plaintiff about his right to "seek judicial

review in accordance with 5 U.S.C. § 552(a)(4)(B)."   *Id.* at 2.

By letter dated July 18, 2011, NRC informed plaintiff that it had located 882 responsive pages.   It released 727 pages in their entirety and 104 pages in part.   NRC withheld 50 pages in their entirety and referred one page "to another government agency for their direct response to you."   *Id*., Ex. G.   NRC withheld information under FOIA exemptions 5, 6, 7(C) and 7(E), and informed plaintiff about his right to appeal the decision within 60 days.   In a letter dated July 26, 2011, NRC assessed a duplication fee of $78.20, and informed plaintiff that his request would be closed administratively if it did not hear from plaintiff within 30 days.   *Id*., Ex. H.   By letter dated November 7, 2011, plaintiff stated that he "was 'out on writ' from July 28, 2011 to October 28, 2011" and did not receive NRC's release letter until November 4, 2011.   He requested "that you toll the period of time . . . and reopen or reconsider your decision to administratively close this case . . . ."   *Id*., Ex. I.   Plaintiff enclosed a money order for $78.20.   *Id*.   On December 30, 2011, plaintiff requested a refund of the duplication fee because he had already received the same documents from USCIS.   *Id*., Ex. J.   Also on December 30, 2011, plaintiff appealed the NRC's July 18, 2011 release determination.   *Id*., Ex. K.   On January 6, 2012, the appeal was denied as untimely.   *Id*. ¶ 18.

## LEGAL STANDARD

### A.  Motions to Dismiss

In evaluating a motion to dismiss, the court must "treat the complaint's factual allegations as true . . .   and must grant plaintiff 'the benefit of all inferences that can be derived from the facts alleged.' "   *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000), quoting *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979) (citations omitted). Nevertheless, the court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the court accept plaintiff's legal conclusions.   *Browning v.*

*Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002); *see Warren v. District of Columbia*, 353 F.3d 36, 39-40 (D.C. Cir. 2004) (differentiating unacceptable conclusions of law from acceptable conclusions of fact).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face . . . .   A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted); *see Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . .") (citations omitted).   While "[a] pro se complaint . . . must be held to less stringent standards than formal pleadings drafted by lawyers . . . even a pro se complaint must plead factual matter that permits the court to infer more than the mere possibility of misconduct."   *Atherton v. District of Columbia Off. of Mayor*, 567 F.3d 672, 681-82 (D.C. Cir. 2009) (internal quotations marks and citations omitted).

## B.   Motions for Summary Judgment

"FOIA cases are typically and appropriately decided on motions for summary judgment." *Moore v. Bush*, 601 F. Supp. 2d 6, 12 (D.D.C. 2009).   The district court reviews the agency's action de novo and "the burden is on the agency to sustain its action." 5 U.S.C. § 552(a)(4)(B); *accord Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981).

On a motion for summary judgment, the Court generally "must view the evidence in the light most favorable to the nonmoving party, draw all reasonable inferences in his favor, and eschew making credibility determinations or weighing the evidence."   *Montgomery v. Chao*, 546 F.3d 703, 706 (D.C. Cir. 2008); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48

(1986).   But where, in a FOIA case, a plaintiff has not provided evidence that an agency acted in

bad faith, "a court may award summary judgment solely on the basis of information provided by

the agency in declarations," *Moore*, 601 F. Supp. 2d at 12, provided that the declarations are not

"conclusory[,] . . .   vague or sweeping."   *King v. United States Dep't of Justice*, 830 F.2d 210,

219 (D.C. Cir. 1987) (internal citation and quotation marks omitted).

## ANALYSIS

### I.  Defendants' Motion to Dismiss

Although plaintiff has invoked other statutes, *see* Am. Compl. at 1, the complaint is

predicated on the alleged unlawful withholding of agency records.   Therefore, the

"comprehensiveness of FOIA" forecloses any claims purportedly brought also under the APA, the

DJA and the All Writs Act.   *Johnson v. Executive Office for U.S. Attorneys*, 310 F.3d 771, 777

(D.C. Cir. 2002).   *See Ray v. Fed. Bureau of Prisons*, 811 F. Supp. 2d 245, 249 (D.D.C. 2011)

(finding APA claim predicated on systemic delay in processing FOIA requests not sustainable);

*Pickering-George v. Registration Unit, DEA/DOJ*, 553 F. Supp. 2d 3, 4, n.1 (D.D.C. 2008) ("The

exclusive nature of the FOIA precludes mandamus relief.").   Furthermore, the Privacy Act is not

at issue because defendants have addressed plaintiff's claims under FOIA, and "section (b)(2) of

the Privacy Act represents a Congressional mandate that the Privacy Act not be used as a barrier to

FOIA access."   *Greentree v. United States Customs Serv.*, 674 F.2d 74, 79 (D.C. Cir. 1982).

Finally, defendants argue correctly that the FOIA does not apply to the Administrative

Office of the United States Courts because it is an arm of the judicial branch, which is not subject

to FOIA.   *See Banks v. Dep't of Justice*, 538 F. Supp. 2d 228, 231 (D.D.C. 2008) ("The term

'agency' as defined for purposes of FOIA . . . expressly excludes the courts of the United States . .

. The phrase 'courts of the United States' is interpreted such that this exemption applies to the

17

entire judicial branch of government," including the AOC), citing 5 U.S.C. §§ 551(1)(B), 552(f)(1); *Washington Legal Found. v. United States Sentencing Comm'n*, 17 F.3d 1446, 1449 (D.C. Cir. 1994); *Chambers v. Div. of Prob., Admin. Office of U.S. Courts*, No. 87-0163, 1987 WL 10133, at *1 (D.D.C. Apr. 8, 1987).

Accordingly, the Court grants defendants' motion to dismiss the claims against the Administrative Office of the United States Courts and as to any claims brought under the APA, the DJA, the All Writs Act, and the Privacy Act.

## II. Defendants' Motion for Summary Judgment

FOIA requires government agencies to release records upon request in order to "ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978). But because "legitimate governmental and private interests could be harmed by [the] release of certain types of information," Congress provided nine specific exemptions to the disclosure requirements. *FBI v. Abramson*, 456 U.S. 615, 621 (1982); *see also Ctr. for Nat'l Sec. Studies v. DOJ*, 331 F.3d 918, 925 (D.C. Cir. 2003) ("FOIA represents a balance struck by Congress between the public's right to know and the government's legitimate interest in keeping certain information confidential."). These nine FOIA exemptions are to be construed narrowly. *Abramson*, 456 U.S. at 630.

To prevail in a FOIA action, an agency must demonstrate that each document that falls within the class requested either has been produced . . . or is wholly exempt from the [FOIA's] inspection requirements.' " *Students Against Genocide v. U.S. Dep't of State*, 257 F.3d 828, 833 (D.C. Cir. 2001), quoting *Goland v. CIA*, 607 F.2d 339, 352 (D.C. Cir. 1978). In other words, the agency must show that "materials that are withheld . . . . fall within a FOIA statutory

exemption." *Leadership Conf. on Civil Rights v. Gonzales*, 404 F. Supp. 2d 246, 252 (D.D.C. 2005). An inadequate search may also constitute an improper withholding under the FOIA. *See Maydak v. U.S. Dep't. of Justice*, 254 F. Supp.2d 23, 44 (D.D.C. 2003). So, when the reasonableness of the search is challenged or no responsive records are located, the agency prevails on summary judgment if it shows that it made "a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990).

Defendants argue that summary judgment is warranted because: (1) plaintiff failed to exhaust his administrative remedies as to some claims; and (2) defendants have properly applied FOIA exemptions to the withheld material.

## A. Exhaustion of Administrative Remedies

"Exhaustion of administrative remedies is generally required before filing suit in federal court so that the agency has an opportunity to exercise its discretion and expertise on the matter and to make a factual record to support its decision." *Hidalgo v. FBI*, 344 F.3d 1256, 1258 (D.C. Cir. 2003) (citation and internal quotation marks omitted); *accord Wilbur v. CIA*, 355 F.3d 675, 677 (D.C. Cir. 2004) (per curiam). A requester's "failure to comply with an agency's FOIA regulations is the equivalent of a failure to exhaust" administrative remedies. *West v. Jackson*, 448 F. Supp. 2d 207, 211 (D.D.C. 2006) (citations omitted). "Courts have consistently confirmed that the FOIA requires exhaustion of th[e] [agency's] appeal process before an individual may seek relief in the courts." *Oglesby*, 920 F.2d at 62. In addition, "[e]xhaustion does not occur until the required fees are paid or an appeal is taken from the refusal to waive fees." *Id.* at 66. The requester's failure to exhaust does not deprive the Court of subject matter jurisdiction but

precludes judicial review "if the purposes of exhaustion and the particular administrative scheme support such a bar."   *Hidalgo*, 344 F.3d at 1259 (citation and internal quotation marks omitted).

### 1.   HHS Claims

HHS contends that plaintiff failed to exhaust his administrative remedies as to most of the requests submitted to that agency.[2]   In response to the four requests submitted to CMS between April 24 and 27, 2011, CMS estimated the search fees to be $368 for the first request, which plaintiff had indicated he was willing to pay, but CMS did not have sufficient information to address the other three requests.   Marquis Decl. ¶¶ 17-22.   Approximately one year after plaintiff submitted those requests, on May 16, 2012, CMS "sent out 'continued interest' letters" to plaintiff's last known address to determine if he "wished to continue pursuing the four requests." *Id*. ¶ 25.   When plaintiff failed to respond, CMS closed the requests in July 2012.   *Id*.

Defendants have not explained why CMS did not process plaintiff's first request.   CMS's declarant states "[w]e are unable to ascertain from the documents in the respective FOIA files whether Plaintiff was provided with the [foregoing] estimate . . . or whether [he] was advised that the agency was unable to locate the other three providers, with the information [he] originally provided[.]"   *Id*. ¶ 23.   Therefore, defendants have not sustained their burden by showing that plaintiff was advised about his right to appeal administratively, and an agency's failure to "provide

---

[2]   In responding to defendants' fact statement, plaintiff states that "instead of pursuing #0929 2009 7017 due to its deficiency, [he] decided to submit a new written FOIA request dated on or about February/March 2010 and duly received an acknowledgment letter." Pl.'s Opp'g Facts ¶ 1. Plaintiff admits that he could not supply the acknowledgment letter or the tracking number, *see* Am. Compl. ¶ 19, n.2, and he has not rebutted with any evidence CMS's declaration that the request was not received.   *See* Marquis Decl. ¶ 7.   Therefore, the Court finds that plaintiff has stated no claim based on the alleged new request.   *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"). Even if he has, there is no indication in the record that the request has been processed, let alone exhausted.

notice [to the requester] of [his] right to appeal" an adverse decision to the head of the agency is "insufficient under the FOIA to trigger the exhaustion requirement." *Oglesby*, 920 F.2d at 67.

Similarly, in response to the two requests submitted to CMS on June 29, 2011, CMS's declarant suggests that CMS had insufficient information to conduct a search but again admits that he was "unable to ascertain . . . whether Plaintiff was subsequently advised that the agency was unable to locate [responsive] records[.]" Marquis Decl. ¶¶ 30-31. CMS also closed those requests when plaintiff failed to respond to the May 16, 2012 continued interest letters which were sent to plaintiff nearly one year after he had submitted the requests. *Id*. ¶ 32. By the declarant's own admission, CMS cannot show that plaintiff received the no-records response and notice of his right to appeal that would trigger the exhaustion requirement.

In sum, the record contains no evidence to trigger the exhaustion requirement with regard to the HHS requests. Furthermore, CMS's declarant acknowledges that the continued interest letters probably should not have been sent to plaintiff since there is no indication that his interest in the requests had waned. *See* Marquis Decl. ¶ 14 ("Had the FOIA Division been aware of the outstanding fee invoices, the 'continued interest' letters would not have been issued."). Consequently, summary judgment based on plaintiff's purported failure to exhaust his administrative remedies as to CMS request numbers 0503 2011 7018, 7020, 7054, and 7055, and CMS request numbers 0708 2011 7009 and 7010 is denied.

## 2. EOUSA Claims

EOUSA contends that plaintiff failed to exhaust his administrative remedies with regard to request numbers 10-3390 and 10-2227. *See* Defs.' Mem. at 30-31. The record shows, though, that plaintiff did appeal the former request, but the OIP closed the appeal as untimely. *See* Brandon Decl, ¶¶ 39-43. Plaintiff has done all he can do at the administrative level with regard to

Request Number 10-3390, and the record shows that EOUSA withheld all responsive records in full under FOIA exemption 6.  *See id.* ¶ 36.   The Court therefore finds that addressing the merits of that claim "presents no risk of undermining the purposes and policies underlying the exhaustion requirement," *Wilbur*, 355 F.3d at 677, and it declines to dismiss the claim based on Request Number 10-3390 for failure to exhaust.  *See White v. Department of Justice*, 893 F. Supp. 2d 24, 27 (D.D.C. 2012) ("Since plaintiff's administrative appeal of the . . . 'no records response' would be untimely and exhaustion is not jurisdictional, the Court finds it more prudent to resolve the merits of this action.").

Plaintiff does not dispute that he failed to pay the duplication fees assessed for Request Number 10-2227, seeking the U.S. Attorneys' Manual.  *See* Brandon Decl. ¶¶ 47-50.   Thus, summary judgment is granted as to that request due to plaintiff's failure to exhaust.[3]

### 3.  Homeland Security Claim

Like the EOUSA, the NRC closed plaintiff's administrative appeal of its decision to withhold information as untimely, Eggleston Decl. ¶¶ 13, 18, but it has also shown that responsive records were released and FOIA exemptions were asserted.  *See id.* ¶ 13 and Ex. G.   The Court does not find the purposes of exhaustion undermined by reaching the merits of the claim based on NRC Request Number 2011008278 and, it also declines to dismiss that claim for failure to exhaust.

---

[3]     Besides, EOUSA fulfilled its disclosure obligation as to Request Number 10-2227 by informing plaintiff that the U.S. Attorneys' Manual "is publicly available, free of charge, on the worldwide web" and providing him the internet link.   Brandon Decl. ¶ 47.   *See Oglesby*, 920 F. 2d at 70 (finding "adequate under the FOIA" agency's response that the requested records were available in its public reading room and citing examples where "an agency need not respond to a FOIA request for copies of documents [when] the agency itself has provided an alternative form of access") (citations and internal quotation marks omitted).

**B.   Defendants' Asserted Exemptions**

### 1.   HHS, EOUSA, and NRC Records

HHS withheld information under FOIA exemptions 5, 6, 7(A), 7(C) and 7(E), *see* Defs.'
Mem. of P. & A. at 16, EOUSA withheld information under FOIA exemptions 3, 5, 7(A), 7(C) and
7(D), *see id.* at 25-29, and NRC withheld information under FOIA exemptions 5, 6, 7(C) and 7(E),
*see* Eggleston Decl., Ex. G.   But neither the defendants' supporting memorandum nor their
statement of material facts points to where in the voluminous record the exemptions are correlated
with the withheld information, and the references to the declarants' sweeping descriptions of the
withheld information are equally unilluminating.

"[B]ecause 'the agency alone possesses knowledge of the precise content of documents
withheld, the FOIA requester and the court both must rely upon its representations for an
understanding of the material sought to be protected.' " *Baker & Hostetler LLP v. U.S. Dep't of
Commerce*, 473 F.3d 312, 319 (D.C. Cir. 2006), quoting *King v. Dep't of Justice*, 830 F.2d 210,
218 (D.C. Cir. 1987) (footnote omitted).   An agency may utilize a *Vaughn* index, affidavits or
declarations, or "other measures in combination with or in lieu of the index itself . . . 'so long as
they give the reviewing court [and the plaintiff] a reasonable basis to evaluate the claim of
privilege.' " *Judicial Watch, Inc. v. Food & Drug Admin.*, 449 F.3d 141, 146 (D.C. Cir. 2006),
quoting *Gallant v. NLRB*, 26 F.3d 168, 172-73 (D.C. Cir. 1994); *see Vaughn v. Rosen*, 484 F.2d
820, 826-28 (D.C. Cir. 1973) (discussing purpose of indexing and itemizing responsive records);
*Span v. U.S. Dep't of Justice*, 696 F. Supp. 2d 113, 121 (D.D.C. 2010) ("An agency's explanation
for withholding information under FOIA exemptions must meet two requirements. First, it must
'specifically identify[ ] the reasons why a particular exemption is relevant,' and second, it must
'correlat[e] those claims with the particular part of a withheld document to which they apply.' "),

quoting *Mead Data Cent., Inc. v. Dep't of the Air Force*, 566 F.2d 242, 251 (D.C. Cir. 1977). Furthermore, the agency's showing must be sufficient to enable the Court to make a finding about segregability.   *See Trans-Pacific Policing Agreement v. United States Customs Service*, 177 F.3d 1022, 1028 (D.C. Cir. 1999) (placing an "affirmative duty" on the district court to address record segregability).

Upon reviewing the defendants' supporting memorandum, statement of material facts, and declarations supplied by HHS, EOUSA and NRC, the Court finds the declarants' descriptions of the withheld information too sweeping and vague to permit an assessment of the asserted exemptions.   Therefore, summary judgment is denied without prejudice to reconsideration upon defendants' filing of *Vaughn* indexes or some equivalent documents that would reasonably describe the records at issue and explain with specificity how the claimed exemptions apply to the withheld material.   Consequently, the Court will defer consideration of plaintiff's challenge to HHS's search for responsive records.   *See* Pl.'s Opp'g Facts ¶ 6.

### 2.   DHS Records

(i)   <u>USCIS's Withholdings</u>

USCIS, as the custodian of DHS's Alien Files, produced a considerable volume of material, but withheld some information under FOIA exemptions, 3, 5, 6, 7(C), and 7(E).[4]   Defs.' Mem. at 32; *see* Welsh Decl., *Vaughn* Index [Dkt. # 39-7, ECF pp. 25-64].

---

[4]     DHS has withdrawn its exemption 2 justification asserted at the administrative level.   Welsh Decl., ¶ 15.   In addition, the *Vaughn* index reflects that since releasing records in July 2010, DHS has reconsidered certain other exemptions and has released additional records to plaintiff.   *See Vaughn* Index at 3.

a.)   FOIA Exemption 3

Exemption 3 authorizes the government to withhold information that is "specifically exempted from disclosure by statute" so long as (1) the statute "requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue; or" (2) "establishes particular criteria for withholding or refers to particular types of matters to be withheld; and if enacted after the date of enactment of the OPEN FOIA Act of 2009 [enacted Oct. 28, 2009], specifically cites to this paragraph." 5 U.S.C. § 552(b)(3).

It is "beyond dispute" that 26 U.S.C. § 6103 "is the sort of nondisclosure statute contemplated by FOIA Exemption 3," which "leave[s] the IRS with no discretion to reveal those matters publicly."   *Tax Analysts v. IRS*, 117 F.3d 607, 611 (D.C. Cir. 1997).   In addition, § 6103 provides that tax returns and return information "shall be confidential" and prohibits any "officer or employee of the United States" from disclosing such information "except as authorized by this title."   26 U.S.C. § 6103(a).   *See Judicial Watch, Inc. v. Soc. Sec. Admin.*, 701 F.3d 379, 380 (D.C. Cir. 2012) (affirming Social Security Administration's exemption 3 invocation to tax return information).

USCIS properly applied exemption 3 to "federal income tax returns, which are specifically exempt from disclosure pursuant to . . . § 6103 of the Internal Revenue Code."   *Vaughn* Index at 3. Therefore, summary judgment for the defendants is warranted on the exemption 3 withholdings.

b)   FOIA Exemption 5

Exemption 5 bars disclosure of "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5).   A document may be properly withheld under exemption 5 only if it satisfies "two conditions: its source must be a[g]overnment agency, and it must fall within the ambit of a

privilege against discovery under judicial standards that would govern litigation against the agency that holds it." *U.S. Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001).   The Court of Appeals has interpreted exemption 5 "to encompass the protections traditionally afforded certain documents pursuant to evidentiary privileges in the civil discovery context, including materials which would be protected under the attorney-client privilege, the attorney work-product privilege, or the executive deliberative process privilege." *Formaldehyde Inst. v. Dep't of Health & Human Servs.*, 889 F.2d 1118, 1121 (D.C. Cir. 1989) (internal quotation marks omitted).   The agency seeking to withhold a document bears the burden of showing that it falls within the cited exemption.   *Natural Res. Def. Counsel, Inc. v. Nuclear Regulatory Comm'n*, 216 F.3d 1180, 1190 (D.C. Cir. 2000).

USCIS properly redacted the "handwritten notes" of a USCIS adjudicator from an immigration worksheet (pages 240, 634) as deliberative process material because "the notes [are pre-decisional] and reveal the adjudicator's impressions and recommendations to a supervisor regarding agency action on" a form application for immigration benefits.   *Vaughn* Index at 10. Similar information was redacted from Form I-130 (page 386), *id* at 25, and comprised a one-page interoffice memorandum from an adjudicator that was withheld in full (page 427), *id*. at 26.   *See Abtew v. United States Dep't of Homeland Sec.*, --- F. Supp. 3d ---, 2014 WL 2620982, at *4-5 (D.D.C. June 13, 2014) (discussing the deliberate process privilege and upholding exemption 5 application to USCIS document containing author's "personal thoughts about the merits of the asylum case").   Therefore, summary judgment for the defendants is warranted on the exemption 5 withholdings.

c) FOIA Exemptions 6 and 7(C)

The proper application of "privacy exemptions [6 and 7(C)] turns on a balance of 'the individual's right of privacy against the basic policy of opening agency action to the light of public scrutiny.' " *CEI Wash. Bureau, Inc., v. Dep't of Justice*, 469 F.3d 126, 128 (D.C. Cir. 2006), quoting *U.S. Dep't of State v. Ray*, 502 U.S. 164, 175 (1991).   Therefore, the Court will address those exemptions together.

Exemption 6 allows agencies to withhold "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."   5 U.S.C. § 552(b)(6).   The purpose of exemption 6 is "to protect individuals from the injury and embarrassment that can result from the unnecessary disclosure of personal information." *U.S. Dep't of State v. Wash. Post Co*., 456 U.S. 595, 599 (1982).

Exemption 7(C) exempts documents compiled for law enforcement purposes that "could reasonably be expected to constitute an unwarranted invasion of personal privacy."   5 U.S.C. § 552(b)(7)(C).   In order for particular records to qualify for this exemption, the agency must first demonstrate that the documents were compiled for law enforcement purposes.   *See Rural Hous. Alliance v. U.S. Dep't of Agric*., 498 F.2d 73, 80 (D.C. Cir. 1974).   Plaintiff has not disputed that "[s]ome documents" are subject to exemption 7 because they contain information related to immigration fraud or were compiled for some other law enforcement purpose.   *Vaughn* Index at 5-6; *see, e.g., id*. at 10 (redacting name of law enforcement officer from TECS law enforcement database used "to record cases of suspected or identified immigration fraud") and *id*. at 19-21 (redacting identities of law enforcement officers from FBI fingerprint record; notice to appear, bond and custody processing worksheet; record of deportable/inadmissible alien; law enforcement memorandum regarding plaintiff; and record of law enforcement check from the Intra Agency

27

Border Inspection System database).   Furthermore, "courts regularly find [e]xemption 7 applicable to USCIS documents" that concern " 'the enforcement of a statute or regulation within [USCIS's] authority and  . . . were compiled for adjudicative or enforcement purposes[.]' " *Gosen v. United States Citizenship & Immigration Servs.*, --- F. Supp. 3d ---, 2014 WL 6809183, at *6 (D.D.C. Dec. 4, 2014), quoting *Mezerhane de Schnapp v. United States Citizenship & Immigration Servs.*, --- F. Supp. 3d ---, 2014 WL 4436925, at *3 (D.D.C Sept. 9, 2014) (alterations in original), citing *Skinner v. U.S. Dep't of Justice*, 806 F. Supp. 2d 105, 113-16 (D.D.C. 2011); *Techserve Alliance v. Napolitano*, 803 F. Supp. 2d 16, 29 (D.D.C. 2011).   *See Techserve Alliance*, 803 F. Supp. 2d at 29 (noting that "USCIS collaborates with other agencies within and outside of DHS to prevent immigration fraud[.]").

The Court of Appeals has consistently held that exemption 7(C) applies when a FOIA request for law enforcement records invokes the privacy interests of any third party mentioned in those records (including investigators, suspects, witnesses, and informants), unless there is an overriding public interest in disclosure.   *See Schrecker v. DOJ*, 349 F.3d 657, 661 (D.C. Cir. 2003); *Lewis v. DOJ*, 609 F. Supp. 2d 80, 84 (D.D.C. 2009).   In addition, the Court of Appeals has determined that third-party identifying information contained in law enforcement records is "categorically exempt" from disclosure under exemption 7(C) in the absence of an overriding public interest.   *Nation Magazine, Washington Bureau v. United States Customs Service*, 71 F.3d 885, 896 (D.C. Cir. 1995).

To determine whether exemptions 6 and 7(C) apply once the threshold requirements are met, a court or agency must "weigh the 'privacy interest in non-disclosure against the public interest in the release of the records.' "   *Lepelletier v. FDIC*, 164 F.3d 37, 46 (D.C. Cir. 1999),

quoting *Nat'l Ass'n of Retired Fed. Emps. v. Horner*, 879 F.2d 873, 874 (D.C. Cir. 1989).   The

Court of Appeals instructs:

> The public interest to be weighed against the privacy interest in this balancing
> test is the extent to which disclosure would serve the core purposes of the FOIA
> by contribut[ing] significantly to public understanding of the operations or
> activities of the government.   Thus, unless a FOIA request advances the
> citizens' right to be informed about what their government is up to, no relevant
> public interest is at issue.

*Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 33-34 (D.C. Cir. 2002) (citations and

internal quotation marks omitted) (alteration in original).   The public interest showing requires

the production of evidence of official misconduct, not "a bare suspicion."   *Nat'l Archives and

Records Admin. v. Favish*, 541 U.S. 157, 174 (2004).   To trigger the balancing requirement, then,

"the requester must produce evidence that would warrant a belief by a reasonable person that the

alleged Government impropriety might have occurred."   *Id*.   Otherwise, there is no

"counterweight on the FOIA scale for the court to balance against the cognizable privacy interests

in the requested records."   *Id*. at 174-75; *see Boehm v. FBI*, 948 F. Supp. 2d 9, 31 (D.D.C. 2013)

("[C]ourts in this Circuit have consistently held that where an individual seeks law enforcement

records that implicate the privacy interests of a third party, the requester bears the burden of

asserting the public interest at play.") (citations omitted).

   USCIS properly redacted under exemption 6 "personally identifiable information

pertaining to third parties," which, if disclosed, "would pose an unwarranted invasion" of personal

privacy and that has no discernible public interest.   *Vaughn* Index at 4-5.   In addition, USCIS

properly redacted under exemption 7(C) "personal[] identifying information of federal law

enforcement personnel involved in compiling information relevant to the [law enforcement]

record(s) in question."   *Id*. at 6.   Plaintiff has not come forward with any countervailing

evidence.   Therefore, summary judgment for the defendants is warranted on the exemption 6 and 7(C) withholdings.

d)   FOIA Exemption 7(E)

Exemption 7(E) protects from disclosure law enforcement records "to the extent that the production of such . . . information . . . would disclose techniques and procedures for law enforcement investigations of prosecutions, or would disclose guidelines for law enforcement investigations of prosecutions if such disclosure could reasonably be expected to risk circumvention of the law."   5 U.S.C. § 552(b)(7)(E).   "Exemption 7(E) sets a relatively low bar for the agency to justify withholding: Rather than requiring a highly specific burden of showing how the law will be circumvented, exemption 7(E) only requires that the [agency] demonstrate logically how the release of the requested information might create a risk of circumvention of the law."   *Blackwell v. FBI*, 646 F.3d 37, 42 (D.C. Cir. 2011) (alteration in original) (internal quotation marks omitted).

USCIS withheld information concerning "the use of electronic database systems, communications and instructions for Agency personnel related to possible interactions with applicants, and information gathering techniques" for preventing and investigating immigration fraud.   *Vaughn* Index at 6-7.   The release of such information could "allow applicants to circumvent immigration laws, alter behaviors, or tailor actions" and, thus, weaken or defeat "the Agency's ability to effectively investigate and compile the information necessary to adjudicate immigration applications."   *Id*. at 7.   Plaintiff has not proffered any countervailing evidence. Thus, summary judgment is warranted on the exemption 7(E) withholdings.

According to USCIS's declarant, all documents withheld in full or in part were "carefully reviewed in an attempt to identify reasonably segregable, non-exempt information.   The

responsive records were redacted in a minimal manner so that only the exempt portions of a particular record were deleted."   Welsh Decl. ¶ 15.   The Court finds from the descriptions provided in USCIS's *Vaughn* index, the narrow scope of the redacted material, and the asserted bases for withholding information that USCIS has satisfied its disclosure obligations under the FOIA.   Therefore, summary judgment is granted on USCIS's withholdings.

ii)   ICE's Withholdings

For the reasons stated above, the Court finds that ICE properly redacted third-party information from the twelve pages referred from USCIS under FOIA exemptions 6 and 7(C), *see* Pavlik-Keenan Decl. ¶¶ 22-30, and "database codes, case numbers, and numeric references, specifically from TECS," under FOIA 7(E).   *Id.* ¶¶ 33-35; *Vaughn* Index [Dkt. # 39-6, ECF pp. 43-44].   *See Ortiz v. United States Dep't of Justice*, --- F. Supp. 3d ---, 2014 WL 4449686, at *9 (D.D.C. Sept. 9, 2014) (citing cases approving withholding under exemption 7(E) of information about TECS system and operating programs and computer access codes); *accord Gosen*, 2014 WL 6809183, at *7 ("Indeed, many courts have upheld the government's withholding of the same sort of information [including codes] from the same databases [including TECS] that are at issue in this case.") (citations omitted).

Moreover, plaintiff has not questioned ICE's referral of his initial request to USCIS upon determining that any responsive records would be located in plaintiff's Alien File. Pavlik-Keenan Decl. ¶ 11.   Therefore, summary judgment is granted on ICE's withholdings.

## C.  Plaintiff's Request for Refund

In addition to NRC's withholdings, which are not addressed at this time, plaintiff requested a refund of $78.20 because he "was deceived into paying for the same documents, which are already in my possession."   Eggleston Decl., Ex. J (Dec. 30, 2011 Letter).   But the request does

not concern the agency's denial of a fee waiver, which is subject to judicial review under the

FOIA, nor is it premised on the statutory reasons for considering a fee waiver.   *See* 5 U.S.C. §

552(a)(4)(A)(iii) (permitting disclosure of documents at no charge or a reduced charge if the

agency determines that "disclosure of the information is in the public interest because it is likely to

contribute significantly to public understanding of the operations or activities of the government

and is not primarily in the commercial interest of the requester").   Hence, the Court finds that it

lacks authority to consider plaintiff's refund request.   *See Antonelli v. Bureau of Alcohol,*

*Tobacco, Firearms & Explosives*, 555 F. Supp. 2d 16, 23, n.4 (D.D.C. 2008) ("Because the Court

finds no authority under the FOIA to interfere with the administrative processing of requests, it

will deny plaintiff's pending motions . . . for orders to compel EOUSA to refund money he

allegedly paid toward the assessed fees supposedly because EOUSA has not processed his

requests.").

## CONCLUSION

For the foregoing reasons, defendants' motion is granted in part and denied in part, and

plaintiff's motions are denied.   A separate Order accompanies this Memorandum Opinion.

AMY BERMAN JACKSON
United States District Judge

DATE:   March 30, 2015